Good morning, Your Honor. Robert Richardson for the appellant, Richard Adams. There is – I know you've read the briefs in the case. I'm not going into all the background. There is one aspect of the contract issue which I'd like to emphasize because I think a misunderstanding on the part of the trial court is what led to the misinterpretation of the settlement agreement by the trial court. And that is the statement by Judge Beard that the single issue to be decided is whether the shortfall and subsequent payment by Mr. Kastner was a default. The default under the terms of the agreement is very precisely stated. Under paragraphs 3 and 4, the default occurs or occurred at the time of the initial nonpayment. When the first installment was due, paragraphs 3 and 4 say that is a default. Then the remedy kicks in. Let me ask this. Had the property sold for the amount of the reduced debt or for more, would we be here today? No, we would not. Because what the agreement says is once there is a default, the right to enforce the entirety of the judgment balance is reinstated, subject to the condition subsequent that the settlement amount is satisfied by the proceeds of sale. And so there's this little tiny shortfall, and you think that triggers the right to the larger amount? Yes. It's a very – it was a very – What if it had been $100? The amount doesn't matter because the language of the agreement is very carefully negotiated agreement. We've been – Mr. Adams had been chasing Mr. Kastner trying to collect on this judgment for a considerable period of time and exerted a considerable amount of effort. The anticipation was that Mr. Kastner, consistent with his previous history, would default. He was given the opportunity to get a substantial discount on the amount due under the judgment. But if he defaulted, he then placed himself in a position of peril, whether the peril was $1 or $100,000 or $5,300. What's happened to the concept of substantial compliance? Substantial compliance does not apply when you're talking about a payment of money, particularly when you're talking about – and we cited the Shepard case. I realize it's a state court opinion, but it is very similar factually to what we have here. When you're talking about an agreement to discount a final judgment, we're not talking about a disputed amount or an unliquidated amount. It is an agreement to discount a judgment. That – as the Shepard case said, that discount is executory until there is strict performance. When there is failure of performance of the agreement, the entirety of the judgment remains collectible. Now, if there had been a judicial sale and the shortfall had been the $5,000 following the judicial sale, and Mr. Kastner never did anything, that would not be substantial performance of the agreement. Well, what happens when they agreed that it could be a commercial private sale? That was an accommodation to the benefit of Ms. Kennedy and Mr. Kastner. Mr. Adams certainly had stood to benefit from it, but it was primarily a benefit to maximize the amount to be generated by the sale so that Ms. Kennedy, since she was losing her house, might have the opportunity to get some additional proceeds out of it. Mr. Kastner would have the benefit of the maximum amount payable to Mr. Adams. But as of that date, Mr. Kastner's right to satisfy the judgment by paying a reduced amount had ceased. Under the terms of the agreement, that right ceased upon the occurrence of the event of default. Let me ask you a question. Anybody sued any of your lawyers who drew any of these documents? Is there any claim here that there's something about overreaching or there's something unconstitutional about this agreement? Is that an issue in this case? No. Okay. We have allegations, though, that there was a fraudulent conveyance to Mrs. Her name was? Kennedy. Kennedy, of these properties. And Kastner's the guy that owes all this money. He did this bad thing, owes all this money, but he transferred all the property to his wife. Correct. Okay. So now, what they could have done is they could have unwound all this, and they tried to because when they got the judgment, they tried to execute on all of Mrs. Kennedy's properties. Now, whether it was fraudulent or not, it was Kennedy's property they were going after, right? Correct. And nobody's ever made a determination that it was a fraudulent transfer, as I can see. That is correct. It was an allegation. Okay. So Kennedy steps up and says, hold the phone. I don't want you taking all my properties. Take the Beverly Hills property. And he says, okay. Your husband over here owes me this money, but I'll tell you what. We'll take a shot at your properties, and if you can get me all my money that we're going to compromise, he had 1.3 judgment, I think. Yes. He says, I'll take 890,000 if you sell it today or go through the sale, and we get to 809. But if you don't, it doesn't say how much it was short. I get to go after your husband, who's the rat in this deal, and get the rest of it. Isn't that what they said? Yes. Maybe it's stupid, right? Maybe it's idiot, but that's exactly what happened. They sold it. It came up short. So he went after the guy for the rest. And he let Kennedy alone, and he did not go after her properties anymore. Isn't that what happened? In fact, released all of her other properties. Now, what if Mr. Kastner went to the buyer on his property and said, I think this is going to come up a little short and I'm really getting a bind. What if he gave the buyer under the table $5,000 and it came out even? Everybody would have gone home happy. I don't know what would have happened with the end of the table. But the key was they had to get all the money that was agreed to in the settlement agreement, or else Kastner was on the line again. That's correct. And doesn't that supersede anything else? Because the settlement agreement determines what happens, because it was a settlement of a $3.1 million judgment for $890 if certain conditions happened. And that is precisely the position we take, and those conditions did not occur. Well, those figures are wrong because there was a lot of other money that was paid. But the original judgment was $1.2 million. Interest continued to accrue for a period of time. $330,000 plus or minus was collected on some sale in New York. As recited in the agreement, after the proceeds from the New York judicial sale, it was anticipated the net that would remain due, I believe it's in the next to last whereas, would be somewhere in excess of $1 million. But it was in Kastner and his wife's control as to what was going to come out of that escrow. Correct. It was under nobody else's control, and they knew they had to come up with it. I don't know what the balance is, whether it's $1 or $300,000. They knew they had to control that escrow or else they were going to be in violation of the settlement agreement. That is precisely our position, Your Honor. I'm just testing to make sure I understood your position. Okay. If I could reserve the remaining two minutes for rebuttal. Unless there are additional questions at this time. No, we're fine. Good morning, Your Honor. Brian Byer, appearing on behalf of Elliot Kastner. Mr. Kastner believes that district court's reading of the agreement is correct and should be affirmed, even under a de novo standard. What's so ambiguous about that agreement? It might be stupid and it might be harsh, but what's the problem? If you read it, the words are very, very clear. Well, there's ambiguity with regard to proceeds. What does that mean? Going to the intent of the parties, Your Honor. What's the intent have to do with the fact that it said get 890,000 or I can go after Kastner? That's exactly what it says. Well, it allowed different approaches and then allowed a private sale, which was not part of the agreement at all. Well, the private sale was to accommodate what Kastner wanted, not what the collecting party wanted. So they had everything in their means to make that $890,000 deal. Now, if they didn't want to do it, that's why it's a question. Anybody see the lawyers here? Did anybody say this is unconstitutional? All I hear is it's a straightforward market deal between these people trying to settle either taking all the property that Mrs. Kennedy had, subjected to execution, or trying to get everything they needed for 890,000 out of Beverly Hills. That's all it sounds like to me. And that might have been a bad deal. It might have stunk, but that's what it says. With all due respect, Your Honor, the district court judge looking at construing the intent of the appellant was to get the amount of money, not in a particular manner, not in a particular form. And she made findings in regard to that. And it is the argument of the appellee that the clearly erroneous standard should apply to these findings of the district court judge. And I'd like to bring to your attention a few of them that she made in regard to the intent of the parties. Well, but she says the intent and the outcome of the parties. Is there anything in the record of why, if we're going to go into this then, why the Beverly Hills property was tendered when all three properties belonging to Kennedy were under execution? The settlement was to keep the execution off those other two properties. Did she mention that? I thought I read that somewhere. Am I wrong that all three properties that were in Kennedy's name, whether rightfully or not, were under execution at the time the settlement was made? There are New York councils, Your Honor. No, I'm asking the question. Is it in the record? Were all three of the Kennedy properties in her name under execution at the time? I don't know the answer to that, Your Honor. Well, okay. I just thought I read it that way. And if so, the settlement agreement was to keep the execution off the New York. She didn't want them to take the New York property. She says go after Beverly Hills. I don't see the district judge saying that. I'm going to figure out what the intent was. All you wanted was $890,000. Why would you take $890,000 when you had three properties under execution and you had a judgment of $1.3 million? Why would you do that? She didn't discuss that either. She discussed what the parties actually did, Your Honor. And what the parties actually did was that they agreed to a private sale. This is a collection matter. If you've ever done any collection work, this is a collection matter with a judgment and an execution. That's all this is. And all they did was they determined how they were going to do this. I may be off track. Maybe I'm outside of the record. It seems to me that what's the standard of review when we review the district judge's findings in that regard when she's determined the intent of the parties? A filly would submit that it is clearly erroneous, Your Honor. Okay. And can point to on the intent of the parties, the trial court found that all the parties agreed to a private sale, not the judicial sale the contract called for, because it would net more money than a judicial sale. That is in the excerpts of 11th Order, pages 9 to 10. The court held this action for these reasons, showed appellant's intent with Mr. Kasner to just get the money owed to appellant paid as soon as possible. This was contrary to facts presented at the district court by appellant in terms of a particular method or from a particular source. On avoiding unreasonable or harsh interpretation, the trial court found that Mr. Kasner had performed in reliance upon the reasonable interpretation of the settlement agreement and had paid the money. It found appellant's position that because $5,388.75 of the 932,000 payment did not come from the private sale proceeds, that Kasner breached the agreement absurd and harsh. And that's the order at excerpts 11 at pages 10 through 11. The trial court's choice of the reasonable interpretation based on its finest facts should be affirmed, and that's a finding of fact contrary to what appellant contends, again. And what the district court judge did was she construed the contract as a whole, Your Honor. And in its own finding at excerpts 11, Order page 11, that the parties reached a separate agreement for a private sale, which appellant concedes in his reply brief at page 9 was a modification or amendment of the settlement agreement, the trial court found support for its conclusion that, looking at the contract as a whole, it did not matter where the money came from, loans, judicial sales, private sales, the object was to pay the settlement amount, which Mr. Kasner did. And the trial court should be affirmed. I want to correct. I made a misstatement. I don't think necessarily that all three properties were under execution. What your brief says is that the action was brought for fraud to set aside the conveyances to Mrs. Kennedy on three properties and to declare they were actually Kasner's properties subject to community property, so they all would be subject to execution. That leads me to my next point. If the standard of review of the district court's interpretation agreement is clearly erroneous, and if there's nothing in the record about the intent of keeping off execution off of the other properties and why you went to Beverly Hills, then do we have any, should we say that we can't guess any better than they did and the judge was there so it wasn't clearly erroneous? Are you saying the record is sufficient and doesn't have any other thing in it to make the interpretation that maybe Mrs. Kennedy, in order to protect her other properties, made this deal and all they really wanted was $890,000? In other words, the fraudulent conveyance might not work. Kasner may still prevail. So you get a settlement for $890,000 and everybody goes home. That's not clearly erroneous. There's still a risk on the fraudulent conveyance action to get to the other properties. And my hesitancy, Your Honor, is that there is language in the agreement. There are other agreements relative to other property. As Appellant indicated, if I may, Your Honor, finally, I think that Appellee submits the district court order should be affirmed on appeal because to rule otherwise would exact a penalty or forfeiture upon Appellee. Thank you. Your Honor, if I may, am I out of time? No, you've got one minute and four seconds. Ciberon, the line of California case said by Mr. Kasner is a law in California. The Shepard case cited by Appellant, with all due respect to the Washington courts, Your Honor, is a Washington court of appeal court, and it's not controlling. None of the and actually cites to the California line of cases favorably the analysis and holdings and rationale in Ciberon, which is cited by Appellee, is holding case in this area. And until there is a California case that follows the analysis of this Washington Shepard case, then it is my understanding of as I understand the federal system, this court of California law must be applied to this matter and the cited California case has covered any settlement and penalty forfeiture issue until California courts distinguish or overrule them. I would also note in Shepard that the delay was a full payment by 70 or so days. As you know, Appellant concedes he had 99.5 percent of his money timely in balance two days later. You got the interest, too, didn't you? Yes, Your Honor. All right. If there are no further questions, we'll submit. Thank you very much. I'd like to clear up one more question because I did confuse the court again and counsel straightened me out. The settlement agreement actually acknowledges that the agreement shall not affect the rights of Adams to proceed with the sale of the executed properties in New York litigation and receive the proceeds thereof in partial satisfaction of the underlying judgment. So there was an attempt, as I understand it by this agreement, to slow down Adams proceeding against the New York properties, to shift the emphasis to sell the Beverly Hills properties in accordance with the terms of the settlement agreement. The possible source of the confusion is there were two different New York properties. Yes, there's a condo and something else. The agreement refers to what's called the Spencer condos, which are condominiums in which an interest in Ms. Kennedy was asserted. There also was a post-judgment execution proceeding on different properties solely owned by Mr. Kastner. See, what I'm getting at is if we're to go to see what is clearly erroneous on the judge, the district judge trying to seek the intent of the properties, the district judge had the settlement agreement before the court, and the settlement agreement clearly indicates that execution was being sought against all of Ms. Kennedy's properties. I don't know if I called execution, but it was steps towards satisfaction of the judgment. Well, it says sale of the executed properties. I take that to mean that – and it says there's a lien on them. Was there an independence on them? To clarify, I believe you have to – I'd like to take advantage of the confusion, but I can't. The executed properties are defined in the agreement to mean the properties in New York solely owned by Mr. Kastner, which already were subject to post-judgment execution. The separate properties owned by Ms. Kennedy were described as the Rancho Mirage condominiums, the Beverly Hills property, and the Spencer condos. But those were not part of the executed property. So that solves that issue. The request for relief was that the interest of Mr. Kastner in all of those properties be established so that they'd be subject to satisfaction of the judgment. And that was what was given up by Mr. Adams in return for proceeding solely against – so his right to proceed against those other properties is gone under the terms of the agreement. He has accepted the Beverly Hills property only. So the effect is the same, but it's not quite appropriate. I understand. Thank you very much. Secondly, on the standard of review, there was no evidence. This is purely the Court's interpretation of the document on the face of the document. We would submit, as we set forth in our papers, that it is a de novo review as opposed to a clearly erroneous standard. Finally, on the Cibran case, the significant distinction between Cibran and the facts we have here is that Cibran involved a disputed, unliquidated amount. The defendant was sued for an amount. The defendant denied liability and, in fact, asserted a counterclaim because of a defective product defense. That claim, that disputed amount, was compromised by the reduced payment with an acceleration clause in the event of default. And the distinction that is made clear by the Shepard case is when you're talking about a judgment, which is an already established liability that is to be treated differently than the compromise of the disputed amount. The judgment itself, unless it is released or stated to be satisfied, remains in effect. And this agreement in paragraph, I believe it's paragraph 12, specifically reserves the enforceability and validity of the judgment until the settlement agreement is performed in full. Thank you. Are there no other questions? Thank you. I think we'll call the next matter. Carla Motley vs. Bernard Parks. Thank you.
judges: B. Fletcher, Pregerson, Brunetti